JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
By: JACOB LILLYWHITE
JESSICA F. ROSENBAUM
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2639/2777
E-mail: jacob.lillywhite@usdoj.gov
jessica.rosenbaum@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ESTATE OF HARRY D. SILVERSTEIN,<br>Defendant. | **COMPLAINT**<br><br>26 Civ. _______ |

Plaintiff the United States of America (the "United States" or the "Government"), on behalf of the United States Environmental Protection Agency ("EPA") and the United States Department of Housing and Urban Development ("HUD") on the counts indicated below, by its attorney, James M. McDonald, United States Attorney for the Southern District of New York, alleges as follows:

## INTRODUCTION

1. Across more than 1,000 apartments in New York City, landlord Harry D. Silverstein ("Silverstein"), the former owner and operator of fourteen residential properties, routinely disregarded federal lead paint safety regulations designed to protect tenants from lead poisoning. After Silverstein passed away, his estate ("Estate") continued to own and manage these properties through Silverstein's limited liability corporations (the "Silverstein LLCs")—some of

them for years—and again routinely violated lead paint safety regulations. In particular, Silverstein and the Estate failed to inform new tenants of the risks of lead paint and disclose any knowledge of or relevant documents pertaining to lead paint in those tenants' units, as required by the federal Lead Disclosure Rule, and they routinely ignored EPA-mandated lead-safe work practices, disturbing lead paint in apartments in a manner that could create lead dust and other hazards. At least 11 children suffered lead poisoning in these buildings after 2012 while Silverstein or the Estate owned or managed them.

2. Lead paint is toxic. There is no level of lead in the human body that is safe. When children ingest lead paint flakes or dust from deteriorated lead paint, they can suffer lifelong neurological and other severe injuries. To avoid these devastating consequences, most housing built before 1978—including about 1,000 apartments in buildings formerly owned and operated by Silverstein and/or the Estate—is subject to strict federal lead paint regulations that require landlords to warn tenants of the severe health risk and the need to take precautions to reduce the risk of lead poisoning. For years, Silverstein and then the Estate flouted these federal lead paint safety regulations.

3. The United States brings this civil action for injunctive and other equitable relief pursuant to the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. § 4852d, and the Toxic Substances Control Act, 15 U.S.C. § 2616(a), for violations of the lead-based paint safety regulations referred to as the Lead Disclosure Rule (24 C.F.R. part 35, subpart A, and 40 C.F.R. part 745, subpart F) and the Renovation, Repair and Painting Rule (40 C.F.R. part 745, subpart E).

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter in this action pursuant to 15 U.S.C. § 2616, 28 U.S.C. §§ 1331, 1345, and 42 U.S.C. § 4852d.

5. Venue is proper in this district pursuant to 15 U.S.C. § 2616(a)(2) and 28 U.S.C. §§ 1391(b) and 1395(a) because alleged violations took place within this district.

## PARTIES

6. Plaintiff is the United States of America.

7. Harry D. Silverstein owned, managed, and controlled residential multi-family apartment buildings in New York City, including in the Southern District of New York, until his death on November 4, 2016. After that date, his Estate owned, managed, and controlled these buildings until it sold them, which in some cases was not until 2020.

## BACKGROUND

### I. Lead-Based Paint Safety Regulations

8. Environmental hazards in the home harm millions of people each year. Chief among these hazards is lead paint.[1] Children are easily poisoned in the home when they put lead paint flakes in their mouths or ingest lead-contaminated dust. A child's exposure to even small amounts of lead can cause irreversible neurological problems, including learning disabilities, reduced attention span, and behavioral problems. Even for adults, ingestion of small amounts of lead can cause or exacerbate serious health conditions, including cancer, hypertension, and kidney failure.

9. In 1977, the federal government banned the use of lead-containing paint in residences built in 1978 or later. 16 C.F.R. Part 1303. Lead paint had been frequently used in

[1] The terms "lead paint" and "lead paint hazards" as used in this complaint shall have the same meaning as, and are used interchangeably with, the terms "lead-based paint" and "lead-based paint hazards," respectively, as defined in 24 C.F.R. §§ 35.86 and 35.110 and 40 C.F.R. §§ 745.103 and 745.223.

residences prior to that date and continues to be present in pre-1978 residential buildings across the country.

10. Lead poisoning is a serious health problem in the New York metropolitan area. Each year, thousands of children under the age of six test positive for elevated blood lead levels.[2]

11. In 1992, Congress found that "low-level lead poisoning is widespread among American children, afflicting as many as 3,000,000 children under age 6," 42 U.S.C. § 4851(1), and that even "at low levels, lead poisoning in children causes intelligence quotient deficiencies, reading and learning disabilities, impaired hearing, reduced attention span, hyperactivity, and behavior problems," *id.* § 4851(2).

12. As a result, Congress enacted a "broad program to evaluate and reduce lead-based paint hazards in the Nation's housing stock," and "to ensure that the existence of lead-based paint hazards is taken into account . . . in the sale, rental, and renovation of homes and apartments." 42 U.S.C. § 4851a(2), (4).

13. Among other things, Congress directed EPA and HUD to promulgate regulations requiring disclosure of information concerning lead paint to tenants and purchasers of pre-1978 property and amended the Toxic Substances Control Act ("TSCA") to provide for EPA to promulgate additional lead paint safety regulations. Residential Lead-Based Paint Hazard Reduction Act of 1992, Public Law 102-550, Title X ("Title X"), § 1018 (codified at 42 U.S.C. § 4852d); *id.* § 1021 (codified at 15 U.S.C. subch. IV).

---

[2] For the purpose of this complaint, the terms "lead poisoning" and "elevated blood lead level" refer to blood lead levels that equal or exceed 5 micrograms per deciliter, the applicable blood lead level reference value established by the Centers for Disease Control and Prevention ("CDC") between 2012 and 2021. In 2021, the CDC reference value was lowered further to 3.5 micrograms per deciliter.

14. The federal lead paint regulations at issue here—the Lead Disclosure Rule and the Renovation, Repair and Painting Rule—were promulgated pursuant to these statutory provisions.

*A. The Lead Disclosure Rule*

15. In 1996, HUD and EPA promulgated substantively identical versions of the "Lead Disclosure Rule." 24 C.F.R. part 35, subpart A (HUD's Lead Disclosure Rule); 40 C.F.R. part 745, subpart F (EPA's Lead Disclosure Rule).

16. The Lead Disclosure Rule requires landlords and their agents to provide disclosures concerning lead paint to prospective tenants prior to signing a new lease (or, in some cases, a renewal lease) in "target housing." "Target housing" means most housing constructed before 1978. Housing for the elderly or persons with disabilities and zero-bedroom dwellings (unless any child who is less than six years of age resides or is expected to reside in such housing) are excluded from this definition. 15 U.S.C. § 2681(17); 42 U.S.C. § 4851b(27).

17. Among other things, the Lead Disclosure Rule requires a landlord to provide the following information and documentation to prospective tenants before entering into a lease:

- A "lead warning statement" contained in federal regulations that warns prospective tenants of the dangers of lead paint. 24 C.F.R. § 35.92(b)(1); 40 C.F.R. § 745.113(b)(1).

- An EPA-approved pamphlet that warns prospective tenants about the dangers of lead-based paint and provides advice on how to limit those risks. 24 C.F.R. § 35.88(a)(1); 40 C.F.R. § 745.107(a)(1).

- "[A]ny . . . information available [to the landlord] concerning . . . known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces." 24 C.F.R. § 35.88(a)(2); 40 C.F.R. § 745.107(a)(2).

- All records or reports regarding lead-based paint and/or lead-based paint hazards, including the results of inspections. 24 C.F.R. § 35.88(a)(4); 40 C.F.R. § 745.107(a)(4).

18. The information required to be disclosed by the Lead Disclosure Rule includes not only information related to the prospective tenant's apartment but also information relating to common areas accessible to a tenant of that apartment and, in multifamily housing, in certain cases records and reports relating to other apartments. 24 C.F.R. § 35.88(a)(4); 40 C.F.R. § 745.107(a)(4).

19. The purpose of the Lead Disclosure Rule is to enable tenants to take steps to protect themselves and their families in light of the potential or actual presence of lead-based paint or lead-based paint hazards in their apartments.

20. For example, after receiving the disclosures, a family may decide not to sign its lease. Alternatively, the family may attempt to negotiate with the landlord, prior to signing the lease or occupying the apartment, to control any lead paint hazards or abate lead paint as a condition to the effectiveness of the lease.

21. The required disclosures also provide tenants advice on specific steps they can take after moving into the apartment to minimize the risks posed by lead paint. For example, the *Protect Your Family From Lead in Your Home* pamphlet advises tenants in housing that potentially contains lead paint to keep painted surfaces in good condition and clean and free of dust; thoroughly rinse sponges and mop heads often; to carefully clean up paint chips immediately; and to speak to their landlord about fixing surfaces with peeling or chipping paint.

22. Moreover, the pamphlet recommends specific steps that tenants can take to minimize risks to children, including washing children's hands often; keeping children from chewing painted surfaces, such as windowsills; keeping play areas and toys clean; and taking precautions to avoid exposure to lead dust when remodeling.

23. Finally, the pamphlet contains the critical recommendation that families should "consult their health care provider about testing their children for lead."

*B. The Renovation, Repair and Painting Rule*

24. Renovation and maintenance work that disturbs lead paint can expose tenants, visitors, and workers to toxic lead dust and debris.

25. To address this health threat, EPA promulgated the Renovation, Repair and Painting ("RRP") Rule, 40 C.F.R. part 745, subpart E. For covered renovations (including maintenance work), the RRP Rule imposes strict requirements regarding (a) training and certification; (b) notice to tenants; (c) preparation of the work area; (d) work practices used to disturb the painted surface; (e) cleaning of the work area; and (f) recordkeeping.

26. The rule applies to "renovations" for compensation in pre-1978 "target housing," except where the work area has been tested and found to be free of lead. 40 C.F.R. § 745.82. Target housing is thus presumed to contain lead-based paint unless testing has demonstrated to the contrary.

27. "Renovation" is defined broadly to include "the modification of any existing structure, or portion thereof, that results in the disturbance of painted surfaces" and includes work such as "the removal of building components (e.g., walls, ceilings, plumbing, windows)" and "[t]he removal, modification or repair of painted surfaces or painted components (e.g., modification of painted doors, surface restoration, window repair, surface preparation activity (such as sanding, scraping, or other such activities that may generate paint dust))." 40 C.F.R. § 745.83. Certain *de minimis* work referred to as "minor repair and maintenance activities" is excluded from the definition of "renovation," including most interior work affecting six or fewer square feet of painted surfaces. *Id.*

28. The RRP Rule requires a firm performing renovations to obtain an EPA firm certification and assign an EPA-certified renovator to perform certain specified tasks and to supervise or direct the work generally. *Id.* §§ 745.81(a)(3), 745.89(d)(2), 745.90(a). The certified renovator must provide on-the-job training in lead-safe work practices to all workers performing renovations who are not themselves certified renovators. *Id.* §§ 745.81(a)(3), 745.89(d)(1). The rule also requires renovation firms to distribute information to tenants about lead-safe work practices and the dangers of lead hazards, *id.* § 745.84; to obtain written acknowledgement of receipt of such information by tenants, *id.* § 745.84; and to post warning signs, *id.* §§ 745.84(b)(2)(ii), 745.85(a)(1).

29. Before renovation work begins, the RRP Rule requires that the work area be isolated to contain lead dust, *id.* § 745.85(a)(2), including (when inside an apartment), by covering the floor surface in the work area with plastic sheeting or similar protection, *id.* § 745.85(a)(2)(i)(D); by removing all objects from the work area or covering them, *id.* § 745.85(a)(2)(i)(A); by closing and covering all ducts in the work area, *id.* § 745.85(a)(2)(i)(B); and by closing windows and doors in the work area and covering such doors with plastic sheeting, *id.* § 745.85(a)(2)(i)(C).

30. The RRP Rule also prohibits the use of certain methods and machines that generate dust or debris. *Id.* § 745.85(a)(3).

31. As waste is generated during renovations, the RRP Rule requires that it be contained and disposed of in a manner that prevents the release of dust and debris outside the work area. *Id.* § 745.85(a)(4).

32. After the renovation work is complete, the RRP Rule requires that the work area be cleaned to eliminate all dust, debris, and residue, *id.* § 745.85(a)(5), including (when inside an

apartment) by collecting and sealing paint chips and debris, *id.* § 745.85(a)(5)(i)(A); carefully removing and disposing of the protective sheeting used to isolate the work area, *id.* § 745.85(a)(5)(i)(B); cleaning the walls with a damp cloth or HEPA vacuum, *id.* § 745.85(a)(5)(ii)(A); vacuuming, with a HEPA vacuum, all remaining surfaces and objects, including furniture, *id.* § 745.85(a)(5)(ii)(B); and wiping all remaining surfaces and objects with a damp cloth and mopping uncarpeted floors, *id.* § 745.85(a)(5)(ii)(C).

33. To ensure cleaning of the work area is adequate, the RRP Rule requires careful verification of cleaning by a certified renovator, *id.* § 745.85(b), including (when inside an apartment) visual inspection to determine whether dust, debris, or residue remains, *id.* § 745.85(b)(1)(i); and the wiping of windowsills, uncarpeted floors, and countertops in the work area with a cloth and comparison of the color of the wiped cloth to the color of an EPA cleaning verification card, *id.* § 745.85(b)(1)(ii).

34. Finally, the RRP Rule requires that the firm conducting renovation work document its compliance with the RRP Rule and maintain those records for at least three years. *Id.* § 745.86.

**DEFENDANT'S VIOLATIONS OF LEAD PAINT SAFETY REGULATIONS**

35. Silverstein and the Estate systematically violated the Lead Disclosure Rule and the Renovation, Repair and Painting Rule.

36. Silverstein's and the Estate's portfolio included about 1,000 rent-regulated apartments in 14 residential buildings in New York City, listed in Exhibit A to this complaint with dates of sale.

37. Silverstein's and the Estate's violations put their tenants and workers at increased risk of lead poisoning, including particularly children under age 6.

**I. Silverstein's and the Estate's Violations of the Lead Disclosure Rule**

38. Between 2012 and the dates through 2020 when the 14 residential buildings were sold, Silverstein, and then the Estate, routinely violated the Lead Disclosure Rule.

39. The Government reviewed lease files related to a sample of 579 units from Silverstein's portfolio for compliance with the Lead Disclosure Rule. For 286 units—nearly half—neither Silverstein, the Estate, nor their agents provided any lead warning or disclosure to tenants.

40. As described above, *see supra* ¶ 17, the Lead Disclosure Rule required Silverstein and the Estate to provide to prospective tenants, before entering into a lease, any information available to Silverstein or the Estate concerning known lead-based paint or lead-based paint hazards; all records or reports regarding lead-based paint or lead-based paint hazards; a lead warning statement; and the EPA-approved pamphlet about limiting the risks posed by lead-based paint. Prior to entering into a lease renewal, Silverstein and the Estate were required to provide any of this information not provided prior to the initial lease, as well as any new information or records. Each failure to disclose one of these categories of information constitutes a violation of the Lead Disclosure Rule.

41. Silverstein violated the Lead Disclosure Rule thousands of times in connection with the sampled apartments, including more than 2,700 violations for failing to provide tenants with any lead warning or lead disclosure at all. And in just the first year that the Estate owned and operated the buildings, following Silverstein's death on November 4, 2016, the Estate violated the Lead Disclosure Rule more than 500 times across the sampled apartments. More than 270 of these violations of the Lead Disclosure Rule arose from the Estate's total failure to provide tenants with any lead warning or lead disclosure at all.

42. The Estate's and Silverstein's systematic failure to warn their tenants about lead paint violated the Lead Disclosure Rule and put their tenants at risk. If tenants knew the peeling

paint in their apartment contained lead, they could have declined to rent the apartment entirely or, if they decided to rent anyway, they would have been better able to protect themselves and their families. Even if Silverstein and the Estate themselves did not know specifically of the existence of lead paint or lead paint hazards, providing the Lead Disclosure Form with the required lead warning statement and pamphlet would have enabled tenants to guard against the risk of harm, as Congress intended.

43. For instance, in August 2012, Silverstein renewed a lease with a tenant at 488 Rockaway Parkway. Silverstein knew the apartment contained lead-based paint, as New York City's Department of Housing Preservation and Development ("HPD") had previously issued several notices of violation for lead-based paint hazards. Silverstein had never disclosed this to the tenant, or provided the tenant with a lead warning statement or EPA pamphlet; and he failed to do so again in connection with that lease renewal.

44. Similarly, Silverstein failed to disclose known lead-based paint and related records to a tenant at 625 Ocean Avenue in Brooklyn. HPD had previously tested certain surfaces with deteriorating paint and confirmed the paint was lead-based, issuing notices of violation to Silverstein. Silverstein abated those surfaces, but did not test or abate other surfaces in the apartment. In these circumstances, it is important for tenants to know that lead-based paint was used in their apartment. Silverstein failed to disclose the known lead-paint and related records to a new tenant and, in connection with lease renewals in 2013 and 2015, Silverstein falsely certified that he "had no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing."

### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards

**Lead Warning Statement**

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

(i) ______ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

______________________________________________

(ii) ✓ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor (check (i) or (ii) below):

(i) ______ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

______________________________________________

(ii) ✓ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**

INITIAL HERE. PLEASE

(c) [redacted] Lessee has received copies of all information listed above.

(d) [redacted] Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment (initial)**

(e) ______ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Harry D. Silverstein

| | | | |
|---|---|---|---|
| Lessor | Date | Lessor | Date |
| ✓ [redacted] TENANT Lessee | 9/22/13 Date | Lessee | Date |
| Agent | Date | Agent | Date |

SIGN HERE PLEASE.

**Disclosure of Information on Lead-Based and/or Lead-Based Paint Hazards**

Lead Warning Statement:

*Housing Built before 1978 may contain lead-based paint. Lead from paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-base paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

Lessor's Disclosure:

(a) Presence of lead-based paint and/or lead- based paint hazards (Check (I) or (II) below):

(I)____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

__________________________________________

(II) ✓ Lessor has no Knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and reports available to the lessor (Check (I) or (II) below):

(I)____Lessor has provided the lessee with all available records and reports pertaining to lead-Based paint and/or lead-based paint hazards in the housing (list documents below):

__________________________________________

(II) ✓ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Lessee's Acknowledgment (Initial):

Initial here → (c) ____Lessee has received copies of all information listed above.

(d) ____Lessee has received the pamphlet "Protect Your Family from Lead in Your Home".

Agent's Acknowledgment (Initial):

(e) ____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C 4852(d) and is aware of his/her responsibility to ensure compliance.

Certification of Accuracy:

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

*Harry D. Silverstein* (Lessor) ______________ (Date)

[redacted] (Lessee/Tenant) 8/5/15 (Date)

*Lead disclosure forms provided to tenants of apartment stating falsely that no records pertaining to lead paint exist (Highlighting added and lessee name, initials, and signature redacted.)*

## II. Silverstein's Violations of the RRP Rule

45. In addition to widespread non-compliance with the Lead Disclosure Rule, Silverstein and the Estate violated the RRP Rule.

46. When Silverstein and the Estate owned and controlled the buildings identified in Exhibit A, Silverstein and the Estate regularly directed superintendents and, prior to 2019, a particular contractor ("Silverstein Contractor") to perform significant painting, plaster, and

sheetrock work across those buildings that disturbed more than six square feet of painted surface known or presumed to contain lead-based paint.

47. As described above, the RRP Rule requires that such work be done in compliance with federal lead safety rules. Among other things, the work must be done by an EPA-certified firm and an EPA-certified renovator must supervise the work and must perform certain tasks personally, including providing on-the-job training in lead-safe work practices to all workers.

48. Silverstein and the Estate ignored these federal lead safety rules. Silverstein, the Estate, and the Silverstein LLCs were not EPA-certified renovation firms, and the Silverstein Contractor was not an EPA-certified renovation firm after October 1, 2015. Building superintendents and relevant employees were not EPA-certified as renovators, and their work was not supervised by an EPA-certified renovator.

49. Disturbing lead-based paint without using lead-safe work practices can expose tenants and the workers themselves to toxic lead hazards.

**III. Lead Poisoning**

50. Between 2012 and the dates the relevant buildings were sold, at least 11 children living in apartments owned by Silverstein and then the Estate suffered lead poisoning, as reflected in elevated blood lead levels. Although residing in the building does not demonstrate conclusively that lead paint in the building caused the lead poisoning, lead paint in their residential building is by far the most common cause of lead poisoning of children.

51. These numbers likely understate the number of poisoned children in Silverstein's buildings. Many children never receive tests for lead poisoning, even in New York where health care providers are required to test children for lead at one and two years of age. *See* N.Y. Public Health Law § 67-1.2.

## CLAIMS FOR RELIEF

## COUNT ONE: LEAD DISCLOSURE RULE

52. The United States, on behalf of EPA and HUD, repeats and realleges the allegations in paragraphs 1 through 51.

53. Silverstein, and then the Estate, were lessors within the meaning of the Lead Disclosure Rule.

54. Between 2012 and the dates when the buildings were sold, Silverstein and then the Estate systematically violated the Lead Disclosure Rule.

55. These violations of the Lead Disclosure Rule threatened irreparable harm to the health and safety of children and others living in Silverstein's buildings.

56. Violation of the Lead Disclosure Rule is a "prohibited act" under and a violation of TSCA, 15 U.S.C. § 2689, as well as a violation of Title X, 42 U.S.C. § 4852d.

57. Section 16(a) of TSCA and Section 1018(b) of Title X authorize EPA and HUD to pursue administrative penalties for violations of the Lead Disclosure Rule. 15 U.S.C. § 2615(a), 42 U.S.C. § 4852d(b)(1).

58. Section 17(a) of TSCA, and Section 1018(b)(2) of Title X provide federal district courts with jurisdiction to enjoin violations of Section 409 of TSCA. 15 U.S.C. § 2616(a), 42 U.S.C. § 4852d(b)(2).

59. Pursuant to 15 U.S.C. § 2616(a) and 42 U.S.C. § 4852d(b)(2), the Court should issue an order requiring Defendant to comply with the Lead Disclosure Rule to the extent that it owns, operates, controls, or manages residential buildings containing target housing in the future.

**COUNT TWO: RRP RULE**

60. The United States, on behalf of EPA, repeats and realleges the allegations in paragraphs 1 through 59.

61. Silverstein Contractor was a "firm" "performing renovations" "for compensation" in "target housing" within the meaning of the RRP Rule. However, Silverstein Contractor's RRP certification had lapsed as of October 1, 2015, and was not renewed.

62. Silverstein, the Estate, and the Silverstein LLCs were firms "performing renovations" "for compensation" in "target housing" within the meaning of the RRP Rule. However, they were not RRP-certified.

63. Silverstein and then the Estate repeatedly violated the RRP Rule from 2015 until 2019 by relying on Silverstein Contractor to perform renovation work without the requisite certification.

64. Violation of the RRP Rule is a "prohibited act" under and violation of TSCA, 15 U.S.C. § 2689.

65. Section 16(a) of TSCA authorizes EPA to pursue administrative penalties for violations of the RRP Rule. 15 U.S.C. § 2615(a).

66. Section 17(a) of TSCA provides federal district courts with jurisdiction to restrain any violation of Section 409 of TSCA. 15 U.S.C. § 2616(a).

67. Pursuant to 15 U.S.C. § 2616(a), the Court should issue an order requiring that requiring Defendant to comply with the RRP Rule to the extent that it owns, operates, controls, or manages residential buildings containing target housing in the future.

**PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that the Court:

(i) Enjoin Defendant to comply with the Lead Disclosure Rule and RRP Rule to the extent that it owns, operates, controls, or manages residential buildings containing target housing in the future; and

(ii) Order such further relief as the Court may deem just and proper.

Dated: September 8, 2026
New York, New York

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
*Attorney for the United States*

JACOB LILLYWHITE
JESSICA F. ROSENBAUM
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2639/2777
jacob.lillywhite@usdoj.gov
jessica.rosenbaum@usdoj.gov

OF COUNSEL:
Natasha Goss
Assistant Regional Counsel
Naomi Shapiro
Associate Regional Counsel
U.S. Environmental Protection Agency, Region II

Lee Ann Richardson
Assistant General Counsel for Administrative Law
Sara Assaid
Attorney-Advisor
U.S. Department of Housing & Urban Development

## Exhibit A

| **Buildings Previously Owned by Harry D. Silverstein and/or the Estate** |
|---|
| 1555 Grand Concourse, Bronx, New York 10452 |
| 3971 Gouverneur Avenue, Bronx, New York 10463 |
| 488 Rockaway Parkway, Brooklyn, New York 11212 |
| 292 Midwood Street, Brooklyn, New York 11225 |
| 141 Lenox Road, Brooklyn, New York 11226 |
| 261 Lenox Road, Brooklyn, New York 11226 |
| 605 E. 16th Street, Brooklyn, NY 11226 |
| 535 E. 21st Street, Brooklyn, New York 11226 |
| 625 Ocean Avenue, Brooklyn, New York 11226 |
| 250 Parkville Avenue, Brooklyn, New York 11230 |
| 35-08 95th Street & 35-05 94th Street, Jackson Heights, New York 11372 |
| 39-30 59th Street, Woodside, New York 11377 |
| 91-35 193rd Street, Jamaica, New York 11423 |
| 87-40 165th Street, Jamaica, New York 11432 |